<div style="margin-left: margin">Wilcox<br>
<i>v.</i><br>
Howland.</div>

Upon the other point, the Court are of opinion, that a threat of a judgment creditor, to obtain satisfaction by a levy on the property of the judgment debtor, being to exercise his legal right only, cannot be considered such duress as to render void a contract, otherwise valid.

<p align="right"><i>Judgment on the verdict, for the plaintiff.</i></p>

---

## The Inhabitants of ABINGTON *versus* The Inhabitants of NORTH BRIDGEWATER.

Where a warrant, issued by the selectmen of a town, under *Prov. St.* 4 *W. & M. c.* 13, § 9, to a constable, requiring him to warn a person to depart from the town, in order to prevent his gaining a settlement therein, and the return of the officer thereon, were returned into the Court of Sessions and entered on a book of records of that court, it was *held*, that such entry was to be regarded as a record, and that an attested copy of it was admissible in evidence.

Such a warrant and return, notwithstanding the return do not conform to the requisitions of the statute, are admissible in evidence against such town, to prove that the person warned did in fact reside in the town at the time of the warning.

On the question of a pauper's settlement, which depended on the settlement of an ancestor acquired by his dwelling in a house on or near the boundary line between two towns, and which house was pulled down a long time ago, it was *held*, that the declarations of aged persons, since deceased, who lived in its vicinity, made while it was occupied by the ancestor, were admissible to show the position of the house in relation to the dividing line between the two towns.

Every person must have a domicil somewhere.

A person can have only one domicil, for one purpose, at one and the same time.

Where the boundary line between the towns of R. and N. B. passed through a dwellinghouse in such a direction, as that that portion of the house which was in N. B. was sufficient in itself to constitute a habitation, while the portion in R. was not sufficient for that purpose, it was *held*, that a person, by occupying such house, acquired a domicil in N. B.

*It seems*, that if, in such case, the line had divided the house more equally, the fact that the occupant had habitually slept in that part, which was in N. B., would be a preponderating circumstance to show that he was domiciled in that town, and, in the absence of other evidence, would be decisive of the question.

ASSUMPSIT for expenses incurred by the plaintiffs in support of Susannah Hill, a pauper, whose settlement was alleged to be in North Bridgewater. This town. until 1821, was a part of Bridgewater, but in reference to this case the acts of Bridgewater may be regarded and spoken of as the acts of North Bridgewater.

At the trial, before *Morton* J., it appeared, that the settle-

ment of the pauper depended upon that of her grandfather, Ebenezer Hill, and that his original settlement was in Abington.

The plaintiffs contended, that Ebenezer Hill acquired a settlement in North Bridgewater by removing into that town and residing there for a year without being warned to depart, previously to April 10th, 1767. In order to prove this fact, the plaintiffs offered in evidence an attested copy of an entry in the records of the Court of Sessions. This entry purported to be a copy of a warrant, dated July 10th, 1764, from the selectmen of North Bridgewater to the constables of that town, commanding them " to warn Ebenezer Hill and Abigail, his wife, represented to us to be inhabitants of Abington," &c. " now dwelling in a house erected on George Packard's land in North Bridgewater, with their five children, named " &c. "immediately to depart the said town of North Bridgewater;" and a copy of the return of one of the constables of North Bridgewater, thereon, dated July 18th, 1764, setting forth merely, that in pursuance of such warrant he had warned Ebenezer Hill and his wife and children to depart from the town immediately.

The defendants objected to the admission of this evidence, but the objection was overruled, and the evidence admitted.

It appeared, that the house to which Ebenezer Hill removed when he left Abington, had long since been taken down, but that it was situated either adjoining to, or upon the dividing line between North Bridgewater and the town of Randolph, then a part of Braintree. The plaintiffs contended, that the house was wholly within the limits of North Bridgewater. The defendants, for the purpose of showing that a habitable part of such house was within the limits of Randolph, offered in evidence the declarations of several aged persons living in the vicinity of the house while it stood, but who had since deceased, which declarations were made while Ebenezer Hill resided there. This evidence was rejected.

The jury were instructed, that unless the whole of the habitable part of the house in question was in North Bridgewater, E. Hill could not have gained a settlement in that town by his residence in such house.

The jury returned a verdict for the plaintiffs.

If the copy of the entry in the records of the Court of Ses·sions, was improperly admitted, or the evidence offered by the defendants, ought to have been received, a new trial was to be granted ; otherwise the verdict was to stand.

*W. Baylies* and *Ames*, for the defendants, to the point, that the copy of the entry in the records of the Court of Sessions, was inadmissible in evidence, cited 1 Stark. Evid. 69, 297 ; *Sutton* v. *Uxbridge*, 2 Pick. 436 ; 1 Gilb. Evid. 9 ; *Hamilton* v. *Ipswich*, 10 Mass. R. 506 ; *Loudon* v. *Deering*, 1 N. Hamp. R. 13 ; that the declarations of aged persons who had resided in the vicinity of the house, were admissible to show its situation, 14 East, 327, and notes ; *Boardman* v. *Reed*, 6 Peters, 328 ; 3 Dane's Abr. 397 ; *Rex* v. *Chadderton*, 2 East, 27 ; *Wilmington* v. *Burlington*, 4 Pick. 174 ; *Rex* v. *Ferry Frystone*, 2 East, 54 ; *Wilson* v. *Boerum*, 15 Johns R. 286 ; and that the town of North Bridgewater was not bound by the declarations or admissions contained in the copy of the warrant, *Norton* v. *Mansfield*, 16 Mass. R. 48 ; 3 Stark. Evid. 1198 ; *Rex* v. *Clifton*, 2 East, 176 ; *Rex* v. *Wooton St. Lawrence*, 1 Burr. Settlement Cas. 581.

*Eddy* and *Warren*, for the plaintiffs, to the point, that the copy of the entry was admissible in evidence, cited Anc. Charters, &c. 251 ; *Haven* v. *Brown*, 7 Greenleaf, 424 ; *Peto* v. *Hague*, 5 Esp. R. 134 ; 1 Esp. R. (Day's ed.) 375, note ; *Bingham* v. *Cabot*, 3 Dallas, 39 ; *Sutton* v. *Uxbridge*, 2 Pick. 436 ; *Ward* v. *Oxford*, 8 Pick. 476 ; *Bridgewater* v. *West Bridgewater*, 7 Pick. 191 ; and that the evidence offered by the defendants in relation to the situation of the house, was inadmissible, *Braintree* v. *Hingham*, 1 Pick. 245 ; *Wilmington* v. *Burlington*, 4 Pick. 174 ; *Rex* v. *Erith*, 8 East, 539 ; *Queen* v. *Hepburn*, 7 Cranch, 295 , *Outram* v. *Morewood*, 5 T. R. 121 ; *Weeks* v. *Sparke*, 1 Maule & Selw. 686 ; 1 Stark. Evid. 60 *et seq*.

PUTNAM J. afterward drew up the opinion of the Court. The plaintiffs contend, that the settlement of the pauper was in North Bridgewater, being derived from her ancestor, Ebenezer Hill, who resided there one year before April 10th, 1767, without being legally warned to depart therefrom.    His settle-

ment was originally in Abington, and must continue, unless that town shall prove that he acquired another settlement within the Commonwealth. To prove that he resided in North Bridgewater in 1764, a copy of a record of the Court of Sessions, of a warrant to the constables of North Bridgewater, was produced ; and it was not considered by the plaintiffs as a legal warning, according to the then provisions of the law, but as good evidence to prove the fact of the actual residence of E. Hill in North Bridgewater, at the date of the warrant.

The first question to be considered is, whether that copy was admissible evidence.

It was contended for the defendants, that if the original warrant had been produced, it would not have been legal evidence, but would have been mere hearsay. But we think that it cannot be considered in that light. It purports to be the proceedings of the selectmen of North Bridgewater, and to be returned by tne constable of North Bridgewater. It is evidence tending to show the fact which the plaintiffs desire to prove, viz. that E. Hill was in North Bridgewater at the time, and that the inhabitants of North Bridgewater were desirous that he should remove. It was of a matter done, not merely of something said, by the fathers of the defendant town.

But it was further contended, that the Court of Sessions had no judicial power in the matter; that the *Prov. St.* 4 *W. & M. c.* 13, § 9, merely required the constable to return the warrant to the Court of Sessions, but did not require any acceptance or any judicial act of the court concerning the same. That section provides, that if any person or persons come to sojourn or dwell in any town within this province, and be there received and entertained by the space of three months, (afterwards extended to one year,) not having been warned by the constable, or other person whom the selectmen shall appoint for that service, to leave the place, and the names of such persons, with the time of their abode there, and when such warning was given them, returned into the Court of Quarter Sessions, every such person shall be reputed an inhabitant of such town or precinct, &c. Now, although there is no express requisition on the court, to record the warrant and return, yet the propriety of doing so is very manifest. And we think, that

15 *

Abington
*v.*
North
Bridgewater.

when such a record is in fact made, it is to be treated and considered as a record of that court, and that a copy is receivable in the same manner as in other cases of copies of record evidence.   It is true that this was not a warrant and return pursuant to the statute.   The return does not state the time of the abode of the pauper in North Bridgewater, so it cannot operate as a legal warning ; but it does state the fact of his being then in that town, according to the evidence produced to the selectmen.   We all think the copy so offered was competent evidence.

It was proved that E. Hill lived in a house which stood on George Packard's land.   But that house has been down for many years ; and it became necessary for the plaintiffs to prove, that it was in North Bridgewater.   On the part of the plaintiffs it was contended, that it stood wholly in North Bridgewater ; on the part of the defendants, that it stood upon the line dividing the towns of North Bridgewater and Braintree, now Randolph. If it stood on the dividing line, then we think the instruction was right, that the dwellingplace of Hill was not in North Bridgewater ; and then the verdict should have been for the defendants.

Where did the house stand in reference to the dividing line, then became a material subject of inquiry ; and the defendants offered the declarations of old persons living in the vicinity of the house while it stood, but now deceased, and which declarations were made while Hill resided there, in reference to the dividing line between the towns, which evidence was rejected. But we think it ought to have been received.   We cannot distinguish it from a question of boundary.   The rule, we think, is well stated in 1 Phil. Evid. c. 7, § 7.   "In questions of boundary between parishes or manors, or on a customary right, or on parochial or manorial customs, declarations as to the common opinion of the place, made by deceased persons, who, from their situation had the means of knowledge and no interest to misrepresent, have been generally received in evidence.   So perambulations are evidence of the extent of a particular parish or manor."   Now the offer was, to give in evidence the declarations of old persons, since deceased, as to the position of this house in respect to the boundary line.   We know not what

they would have said. But suppose that an aged person, now deceased, had said, that he was present at the perambulation of the line between those towns, and that it passed directly through the centre of the house, so leaving one half in one and the other half in the other town, we cannot doubt but such evidence would have been competent.

For the rejection of the evidence so offered, we think the verdict must be set aside and a new trial granted

On the new trial, before *Morton* J., it appeared that E. Hill removed from Abington to a house on or near the dividing line between the towns of North Bridgewater and Randolph, in 1764, and resided therein with his family for ten years or more continually from that time ; and the plaintiffs contended, that the house was wholly in North Bridgewater, or, if not, that all the habitable part thereof was in that town.

It appeared, that the line separating the colonies of Plymouth and Massachusetts was the dividing line between Randolph and North Bridgewater ; and evidence was offered by both parties, tending to show how that line would run in respect to the house, the plaintiffs contending, that two specified monuments were the true monuments of that line, and that a straight line drawn from one to the other would leave the whole of the house in North Bridgewater ; and the defendants, that the line ran in such manner as to leave a habitable part of the house in Randolph.

The jury were instructed, that, if they found that the course of the true line was such as to leave a habitable part of the house in Randolph, they should return a verdict for the defendants ; otherwise, for the plaintiffs. The judge also directed the jury to find specially, whether the beds of the family and the chimney and fireplace, were or were not in North Bridgewater.

The jury returned a general verdict for the plaintiffs ; and the foreman, upon inquiry by the Court, stated that the jury were unable to agree in respect to the line contended for by the plaintiffs, but that they were satisfied, that the northwesterly corner of the house was two feet and one inch in Randolph, and that the beds, chimney and fireplace were in North Bridgewater.

*Abington v. North Bridgewater.*

It did not appear by the evidence, but that the part so found to have been in Randolph, was occupied as much as any other part of the house.

Judgment was to be rendered on the verdict, or a new trial to be ordered, according to the opinion of the Court.

*Oct. 24th, 1839.*

*W. Baylies* and *Ames,* for the defendants, cited *Billerica* v. *Chelmsford,* 10 Mass. R. 394 ; *Rex* v. *Ringwood,* 1 Maule & Selw. 383 ; *Putnam* v. *Jackson,* 10 Mass. R. 502.

*Eddy* and *Warren,* for the plaintiffs, cited Com. Dig. *Leet,* E. ; *Rex* v. *St. Olaves,* 1 Str. 51 ; *St. Mary Colechurch* v. *Radcliffe,* 1 Str. 60 ; *Rex* v. *Hulland,* 2 Dougl. 657 ; *Rex* v. *Brighton,* 5 T. R. 188 ; *Rex* v. *St. Mary Lambeth,* 8 T. R. 240 ; *Rex* v. *Liverpool,* 3 T. R. 118 ; *Sydenham* v. *Lamerton,* 1 Str. 57 ; *Commonwealth* v. *Stockbridge,* 13 Mass. R. 294.

*May term 1840, at Plymouth.*

SHAW C. J. drew up the opinion of the Court. The question of Ebenezer Hill's settlement depends upon this, whether he was an inhabitant of North Bridgewater, before the 10th of April, 1767. If his house or place of residence was in that town, he acquired a settlement there, and the defendants are liable, otherwise not.

In the several provincial statutes of 1692, 1701 and 1767, upon this subject, the terms " coming to sojourn or dwell," " being an inhabitant," " residing and continuing one's residence," " coming to reside and dwell," are frequently and variously used, and, we think, they are used indiscriminately, and all mean the same thing, namely, to designate the place of a person's domicil. This is defined in the Constitution, *c.* 1, § 1, for another purpose, to be the place " where one dwelleth or hath his home."

The fact of domicil is often one of the highest importance to a person ; it determines his civil and political rights and privileges, duties and obligations ; it fixes his allegiance ; it determines his belligerent and neutral character in time of war ; it regulates his personal and social relations, whilst he lives, and furnishes the rule for the disposal of his property when he dies. Yet as a question of fact, it is often one of great difficulty, depending sometimes upon minute shades of distinction, which can hardly be defined. It seems difficult to form any

exact definition of domicil, because it does not depend upon any single fact, or precise combination of circumstances. If we adopt the above definition from the Constitution, which seems intended to explain the matter and put it beyond doubt, it will be found, on examination, to be only an identical proposition, equivalent to declaring, that a man shall be an inhabitant where he inhabits, or be considered as dwelling or having his home, where he dwells or has his home. It must often depend upon the circumstances of each case, the combinations of which are infinite. If it be said to be fixed by the place of his dwellinghouse, he may have dwellinghouses in different places; if it be where his family reside, his family with himself may occupy them indiscriminately, and reside as much in one as another; if it be where he lodges or sleeps, (*pernoctat*,) he may lodge as much at the one as the other; if it be his place of business, he may have a warehouse, manufactory, wharf or other place of business, in connexion with his dwellinghouse in different towns. See *Lyman* v. *Fiske*, 17 Pick. 231. But without pursuing this general view further, to show that it is difficult, if not impossible, to lay down any general rule, on account of the very diversified cases which may be supposed, yet it will generally be found in practice, that there is some one or a few decisive circumstances, which will determine the question.

In coming to the inquiry in each case, two considerations must be kept steadily in view, and these are,

1. That every person must have a domicil somewhere; and

2. That a man can have only one domicil, for one purpose, at one and the same time.

Every one has a domicil of origin, which he retains until he acquires another; and the one thus acquired, is in like manner retained.

The supposition, that a man can have two domicils, would lead to the absurdest consequences. If he had two domicils within the limits of distant sovereign states, in case of war, what would be an act of imperative duty to one, would make him a traitor to the other. As not only sovereigns, but all their subjects, collectively and individually, are put into a state of hostility by war, he would become an enemy to himself, and

bound to commit hostilities and afford protection, to the same persons and property at the same time.

But without such an extravagant supposition, suppose he were domiciled within two military districts of the same state, he might be bound to do personal service at two places, at the same time ; or in two counties, he would be compellable, on peril of attachment, to serve on juries at two remote shire towns ; or in two towns, to do watch and ward, in two different places. Or, to apply an illustration from the present case. By the provincial laws cited, a man was liable to be removed by a warrant, to the place of his settlement, habitancy or residence, for all these terms are used. If it were possible, that he could have a settlement or habitancy, in two different towns at the same time, it would follow that two sets of civil officers, each acting under a legal warrant, would be bound to remove him by force, the one to one town, and the other to another. These propositions, therefore, that every person must have some domicil, and can have but one at one time, for the same purpose, are rather to be regarded as *postulata*, than as propositions to be proved. Yet we think they go far, in furnishing a test, by which the question may be tried in each particular case. It depends not upon proving particular facts, but whether all the facts and circumstances taken together, tending to show that a man has his home or domicil in one place, overbalance all the like proofs, tending to establish it in another ; such an inquiry, therefore, involves a comparison of proofs, and in making that comparison, there are some facts, which the law deems decisive, unless controlled and counteracted by others still more stringent. The place of a man's dwellinghouse is first regarded, in contradistinction to any place of business, trade or occupation. If he has more than one dwellinghouse, that in which he sleeps or passes his nights, if it can be distinguished, will govern. And we think it settled by authority, that if the dwellinghouse is partly in one place and partly in another, the occupant must be deemed to dwell in that town, in which he habitually sleeps, if it can be ascertained.

Lord *Coke*, in 2 Inst. 120, comments upon the statute of Marlbridge respecting courts leet, in which it says, that none

shall be bound to appear, *nisi in balivis ubi fuerunt conversantes*; which he translates, "but in the bailiwicks, where they be dwelling." His Lordship's comment is this; "if a man have a house within two leets, he shall be taken to be conversant where his bed is, for in that part of the house he is most conversant, and here conversant shall be taken to be most conversant." This passage, at first blush, might seem to imply, that the entire house was within two leets. But no man can be of two leets. 2 Doug. 538; 2 Hawk. P. C. c. 10, § 12. Indeed, the whole passage, taken together, obviously means, a house partly within one leet and partly within another; otherwise, the bed would be within the two leets, as well as the house.

It is then an authority directly in point to show, that if a man has a dwellinghouse, situated partly within one jurisdiction and partly in another, to one of which the occupant owes personal service, as an inhabitant, he shall be deemed an inhabitant within that jurisdiction, within the limits of which he usually sleeps.

The same principle seems to have been recognized in other cases, mostly cases of settlement, depending on domicil. *Rex v. St. Olaves*, 1 Str. 51; *Colechurch v. Radcliffe*, 1 Str. 60; *Rex v. Brighton*, 5 T. R. 188; *Rex v. Ringwood*, 1 Maule & Selw. 381.

I am aware, that the same difficulty may arise as before suggested, which is, that the occupant may not always, or principally, sleep in one part of his house, or if he sleeps in one room habitually, the dividing line of the towns may pass through the room or even across his bed. This, however, is a question of fact depending upon the proofs. When such a case occurs, it may be attended by some other circumstance, de cisive of the question. If the two principles stated, are well established, and we think they are, they are, in our opinion, sufficient to determine the present case. It becomes therefore necessary to see what were the facts of this case, and the instructions in point of law, upon which it was left to the jury.

The plaintiffs contended that two monuments pointed out by them, were true and genuine monuments of the Colony line, and if so, a straight line drawn from one to the other, would leave the house wholly in North Bridgewater, and the jury

Abington
*v.*
North
Bridgewa-
ter.

were instructed, if they so found, to return a verdict for the plaintiffs. But the jury stated, on their return, that on this point they did not agree, and therefore, that part of the instruction may be considered as out of the case. It is therefore to be taken, that in point of fact, the line ran through the house, leaving a small part in Randolph and a large part in North Bridgewater. In reference to this, the jury were instructed, that if that line would leave a habitable part of the house in Randolph, the verdict should be for the defendants; otherwise, for the plaintiffs. The jury were also directed to find, specially, whether the beds of the family in which they slept, and the chimney and fireplace, were or were not in North Bridgewater. The jury found a verdict for the plaintiffs, which in effect determined, in point of fact, that the line did run through the house, leaving a small part in Randolph, that the beds and fireplaces of the house were on the North Bridgewater side of the line, and that there was not a habitable part of the house in Randolph.

What was the legal effect of this instruction to the jury? To understand it, we must consider what was the issue. The burden of proof was upon the plaintiffs, to prove that Hill had his settlement in North Bridgewater. But proving that he had a dwellinghouse, standing partly in North Bridgewater and partly in Randolph, would leave it wholly doubtful whether he had his domicil in the one or the other, provided that the line passed the house in such a direction, as that either would have been sufficient for the purpose of a habitation; because it would still be doubtful whether he dwelt upon one or the other side of that line. But if the line ran in such a direction as to leave so small a portion on one side, that it could not constitute a human habitation, then the position of the dwelling determined the domicil. In any other sense, we see not how the correctness of the instruction could be maintained. If the term, "habitable part of the house," was intended to mean, a portion of the house capable of being used with the other part, for purposes of habitation, and the whole constituting together a place of habitation, then every part of the house capable of being used, would be a habitable part. The instruction was, that if a habitable part was in Randolph, the

occupant did not acquire a domicil in North Bridgewater ; it would be equally true in law, that if a habitable part was in North Bridgewater, he did not acquire a domicil in Randolph. If the term "habitable" then, were used in the restricted sense, capable of being used as a part, and not as the whole of a human habitation, the instruction would amount to this, that living ten years in a dwellinghouse divided by an imaginary line into parts, both of which are useful and capable of being used as parts of a dwellinghouse, the occupant would acquire no domicil. But this is utterly inconsistent with the principles of domicil. By leaving his domicil in Abington, and living in the house in question, Hill necessarily lost his domicil in Abington, and necessarily acquired one by living in that house ; and this must be in either Randolph or Bridgewater, and not in both. It may be impossible, from lapse of time, and want of evidence, to prove in which, and therefore the plaintiffs, whose case depends on proving affirmatively that it was in North Bridgewater, may *fail* ; nevertheless it is equally true, in itself, that he did acquire a domicil in one, and could not acquire one in both of those towns. Suppose the proof were still more deficient ; suppose it were proved beyond doubt, that Hill lived in a house, situated on a cleared lot of one acre, through which the town line were proved to run, but it were left uncertain in the proof, on which part of the lot the house was situated. It would be true, that he lost his domicil in Abington, and acquired one in Randolph or North Bridgewater ; but it being entirely uncertain which, the plaintiffs would fail of proving it in North Bridgewater, and therefore could not sustain their action. So if the line ran through a house, in such a manner, that either side might afford a habitation, then dwelling in that house would not of itself prove in which town he acquired his domicil, though he must have acquired it in one or the other. In this sense we understand the instruction to the jury, and in this sense we think it was strictly correct. If they should find, that the line so ran through the house as to leave a part capable, of itself, of constituting a habitation, in Randolph, then dwelling in that house, though partly in North Bridgewater, did not necessarily prove a domicil in North Bridgewater.

16

<div align="right">
Abington<br>
*v.*<br>
North<br>
Bridgewa<br>
ter.
</div>

Under this instruction the jury found a verdict for the plain-tiffs, and we think it is evident from this verdict, that they understood the instruction as we understand it. The jury find, that one corner of the house, to the extent of two feet and one inch, was in Randolph, but that no habitable part of the house was in Randolph; not, as we think, no part capable of being used with the rest of the house, for the purpose of habitation, but no part capable, of itself, of constituting a habitation; from which they draw the proper inference, that the habitation and domicil, and, consequently, the settlement, was in North Bridgewater.

And if we look at the fact, specially found by the jury, we are satisfied that they drew the right conclusion, and could come to no other. If the line had divided the house more equally, we think, on the authorities, that if it could be ascertained where the occupant habitually slept, this would be a preponderating circumstance, and, in the absence of other proof, decisive. Here it is found, that all the beds, the chimney and fireplace, were within the North Bridgewater side of the line, and that only a small portion of the house, and that not a side but a corner, was within the Randolph side, and that so small, as to be obviously incapable of constituting a habitation by itself. We think, therefore, that the instruction was right, and the verdict conformable to the evidence.

*Judgment on the verdict for the plaintiffs.*